**UNITED STATES DISTRICT COURT**
DISTRICT OF MINNESOTA
08-CR-00010-PJS/FLN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICK J. SCHILTZ |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| FRANCIS LEROY McLAIN, | ) | FRANKLIN L. NOEL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS INDICTMENT FOR VIOLATION(S)**
**OF THE GRAND JURY CLAUSE OF THE FIFTH AMENDMENT**

COMES Rick Mattox, Court-Appointed Attorney for the defendant Francis L. McLain in the above-entitled action, and would show this Court the following.

**I.    Congress had no authority to change the mode of proceeding of grand jury proceedings from what our ancestors understood. As a consequence, the defendant was indicted by a grand jury suffering from a defect so fundamental that it was no longer a grand jury.**

In *United States v. Hansel*, 70 F.3d 6 (2nd Cir. 1995) the deciding panel stated:

> Hansel's objection to the presence of a government attorney during the grand jury proceedings fails, because Rule 6(d) of the Federal Rules of Criminal Procedure expressly states that government attorneys may "be present while the grand jury is in session."

*Id.* at 8.

The *language* of Rule 6(d) is *not* the issue addressed by the defendant

herein. The issue addressed herein is whether Rule 6(d) and 28 U.S.C. § 515(a) are *constitutional* and whether Congress had the *authority* to change the *mode* of *proceeding* from what those who authored the indictment by grand jury clause of the Fifth Amendment *intended*.

Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them. *Miranda v. Arizona*, 86 S.Ct. 1602, 1636 (1966).

> It is not without significance, that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.
>
> *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 179 (1951) (Douglas, J., concurring).

Without an indictment or a presentment by a Grand Jury the District Court exceeds its jurisdiction. *Ex Parte Wilson*, 5 S.Ct. 935, 937 (1885).

The accused has a *right* of indictment by grand jury. *United States v. Wellington*, 754 F.2d 1457, 1462 (9th Cir. 1985). He has a *right* not to be prosecuted without indictment by grand jury. *United States v. Wedermeyer*, 51 F.3d 319, 324 (2nd Cir. 1995).

If an indictment is found in willful disregard of the rights of the accused, the court should interfere and quash the indictment. *United States v. Farrington*, 5 F. 343, 348 (D.C.N.Y. 1881).

> "No person shall be held to answer for a capital, or otherwise

>infamous crime, unless upon a presentment or indictment of a grand jury." That does indeed confer a right not to be tried (in the pertinent sense) when there is no grand jury indictment. Undoubtedly, the *common-law protections* traditionally associated with the grand jury attach to the grand jury are required by this provision—including the requisite secrecy of grand jury proceedings.
>
>*Midland Asphalt Corp. v. United States*, 109 S.Ct. 1494, 1499-1500 (1989)

It is defendant's contention that no one in any federal proceeding has been indicted by grand jury as the words "grand jury" were construed by their authors since 1906, and that Congress had no authority to change the *meaning* or the *intent* of the Fifth Amendment's authors, rendering all grand jury proceedings since then unconstitutional.

It is never to be forgotten that in the construction of the language of the Constitution here relied on . . . we are to place ourselves as nearly as possible in the condition of the men who framed that instrument. *Ex Parte Bain*, 7 S.Ct. 781, 787 (1887).

>[T]he court has no power to add to or subtract from the procedures set forth by the Founders. I realize that it is far easier to substitute individual judges' ideas of "fairness" for fairness prescribed by the Constitution, but I shall not at any time surrender my belief that that document itself should be our guide, not our own concept of what is fair, decent, and right. . . . As I have said time and time again, I prefer to put my faith in the words of the written Constitution itself rather than to rely on the shifting, day-to-day standards of fairness of individual judges.
>
>*In re Winship*, 397 U.S. 358, 90 S.Ct. 1068 (1970) (Black, dissenting).

What has happened since our Bill of Rights was enacted in 1791 is just that:

we have come to rely on the shifting, day-to-day standards of fairness of individual judges. Over a hundred years ago the Supreme Court warned us:

> Those who framed our Constitution and the Bill of Rights were ever aware of subtle encroachments on individual liberty. They knew that "illegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure." *Boyd v. United States*, 116 U.S. 616, 635 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886).
>
> *Miranda v. Arizona*, 86 S.Ct. 1602, 1620 (1966).

No act of Congress can authorize a violation of the Constitution. *United States v. Brigoni-Ponce*, 95 S.Ct. 2574, 2578 (1975). The Constitution cannot be interpreted safely *except* by reference to common law and to British institutions as they were when the instrument was framed and adopted. *Ex Parte Grossman*, 45 S.Ct. 332, 333 (1925). That this applies with equal force to federal grand juries is equally clear. *Costello v. United States*, 76 S.Ct. 406, 408 (1956); *Blair v. United States*, 39 S.Ct. 468, 471 (1919), *In Re Grand Jury Proceedings*, 479 F.2d 458, 460-461 note 2 (5th Cir. 1973) (collecting cases), *In Re Grand Jury January, 1969*, 315 F.Supp. 662, 675 (D. Md. 1970).

> If there should happen to be an irreconcilable variance between the two, that which has the superior obligation and validity ought, of course, to be preferred; or, in other words, the Constitution ought to be preferred to the statute, the intention of the people to the intention of their agents . . . .
>
> PUBLIUS (Alexander Hamilton), The Federalist No. 78 (May 28, 1788).

Other pronouncements on the Constitution are equally reassuring. A couple

of examples:

> Courts are to guard against the small encroachments of rights as well as the more egregious; rather, the small encroachments are worse since they imperceptibly wear away the protections of the Constitution, permitting "'[a] close and literal construction [that] deprives them of half their efficacy, and lead[ing] to gradual depreciation of the right, as if it consisted more in sound than in substance.'"
>
> *United States v. Bradley*, 922 F.2d 1290, 1296 (6th Cir. 1991).
>
> Were we to do less, we would fail to protect an imposing tree in the forest of our liberties whose seeds were wrested from the hands of ancient monarchs, planted by legal giants, and nurtured by patriots for centuries.  Then we would surely have to bow our heads when asked where we would hide when the Devil turned round on us.  *See* Robert Bolt, *A Man for All Seasons* 66 (Vintage International Ed. 1990).
>
> *United States v. Becker*, 23 F.3d 1537, 1542 (9th Cir. 1994).

Unfortunately, as applied to the "indictment by grand jury" clause of the Fifth Amendment of the Constitution, all the foregoing high-blown rhetoric means *nothing* unless the presiding judge *honors* the *original intent* of those who authored the Fifth Amendment.

II.  **Constitutional Violations—Indictment By Grand Jury As Opposed To Public Prosecutor.**

"Let justice be done, though the heavens fall."  Lord Mansfield in *Rex v. Wilkes*, 4 Burrow's Reports 2527, 2562 (1768), from an English maxim popular prior to 1600.

See also *United States v. Coggin*, 1 F. 49 (E.D.Wisc. 1880).  (It is the duty of the court to administer the law according to its best understanding, *regardless* of

the consequences).

Constitutional restraints prohibit prosecutors from engaging in conduct that undercuts the *independence* of the grand jury. *United States v. Zielinski*, 740 F.2d 727, 730 (9th Cir. 1984).

At least, that is the rhetoric. "The grand jury usually degenerates into a rubber stamp wielded by the prosecuting officer according to the dictates of his own sense of propriety and justice." *United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 521 (E.D.N.Y. 1974). Any experienced prosecutor will admit that he can indict anybody at any time for almost anything before any grand jury. *Delays in Criminal Cases*, Campbell, 55 F.R.D.229, 253 (1972).

That is the reality. In 1976, for example, federal grand juries returned 23,000 indictments and 123 "no bills." Hearings on H.R. 94, 95th Congress, 1st Session, Congressional Record, page 739 (1977), see *United States v. Ciambrone*, 601 F.2d 616, 622 note 5 (2nd Cir. 1979). Other years reflect figures just as bad (or worse):

| Fiscal Year | Number of Indictments | No True Bills (%) | Total Federal Grand Jury Proceedings |
|---|---|---|---|
| 1976 | 23,612 | 123 (0.518%) | 23,735 |
| 1977 | 21,412 | 119 (0.553%) | 21,531 |
| 1978 | 19,405 | 104 (0.533%) | 19,509 |
| 1979 | 16,356 | 90 (0.547%) | 16,446 |
| 1980 | 16,507 | 85 (0.512%) | 16,592 |
| 1981 | 16,699 | 95 (0.566%) | 16,794 |
| 1982 | 16,989 | 75 (0.440%) | 17,064 |
| Fiscal Year | Number of Indictments | No True Bills (%) | Total Federal Grand Jury Proceedings |

| Year | | | |
|------|--------|-------------|--------|
| 1983 | 17,702 | 63 (0.355%) | 17,765 |
| 1984 | 17,419 | 68 (0.389%) | 17,487 |
| 1985 | 17,051 | 43 (0.252%) | 17,094 |
| 1986 | 20,045 | 66 (0.328%) | 20,111 |
| 1987 | 19,224 | 39 (0.202%) | 19,263 |
| 1988 | 20,156 | 28 (0.139%) | 20,184 |
| 1989 | 23,172 | 31 (0.134%) | 23,203 |
| 1990 | 23,914 | 11 (0.046%) | 23,925 |
| 1991 | 25,927 | 16 (0.062%) | 25,943 |
| 1992 |        |             | 25,470 |
| 1993 |        |             | 23,757 |
| 1994 |        |             | 20,714 |
| 1995 |        |             | 22,856 |
| 1996 |        |             | 23,449 |

From *Statistical Report, United States Attorney's Office*, (Fiscal Years 1976 through 1996).  Note:  Starting in 1992 the Statistical Report ceased to report the number of no true bills, *if* there were any to report.

Members of Congress recognized the problem:  "Their [grand juries] historic purpose as a 'legal shield' is being *disregarded* by *prosecutors* who *totally dominate* the proceedings." Congressional Record, Extension of Remarks, Vol. 123, p. 7678, March 15, 1977, by Honorable Raymond F. Lederer.

"H.R. 94 would insure independent and informed federal grand juries. Jurors, not the prosecutor, would determine and review all the evidence." *Id.*

Congressman Lederer's remarks concerned an article in the Philadelphia Evening Bulletin referring to a bill to reform the federal grand jury system authored by the Honorable Joshua Eilberg, H.R. 94.  The Justice Department apparently retaliated against Representative Eilberg for his grand jury reform attempts.  See *United States v. Eilberg*, 536 F.Supp. 514 (E.D. Pa. 1982).  That bill failed, as did an earlier attempt in 1951.  See *United States v. Cox*, 342 F.2d 167,

186 n. 4 (5th Cir. 1965).

Law reform has never been given priority by any government, perhaps because the law always works a little better for government than for individuals. Blatcher, *The Court of King's Bench 1450-1550*, p. 90 (Univ. of London Athlone Press 1978).

The "no bills" referred to supra were not what one would first imagine:

> Those the grand jury refuses to indict are likely to be people the prosecutor does not *want* indicted. Many of the cases ending up with a "no true bill" are actually instances where a prosecutor feels the need for such backing to support his own view that further proceedings shall not be held.
>
> Congressional Record, Extension of Remarks, Vol. 123, p. 21637, June 9, 1977 by Hon. Benjamin S. Rosenthal.

"A grand juror cannot carry on systematic persecution against a neighbor whom he hates, because he is not permanent in the office." 9 *The Writings of Thomas Jefferson* 83 (Library Edition 1904).

This is *not* true of today's prosecutors.

> [Prosecutors] have a personal interest in winning cases. Successful prosecutors often have the opportunity to move to lucrative positions at private law firms. Others, claiming to be "tough on crime," may run for office or judgeship. The interests of justice and the interests of the prosecutor thus are often in conflict; prosecutors are restricted only by their consciences, and some choose a career-boosting path.
>
> John C. Anderson, *'Our' prosecutors tell lies?*, The National Law Journal, May 10, 1999, Podium, page A25.

The grand jury was designed as a safeguard to protect defendants against oppressive government practices. *Butterworth v. Smith*, 110 S.Ct. 1376, 1380

(1990); *U.S. ex rel Toth v. Quarles*, 76 S.Ct. 1 (1955). Under the common law it was understood that the grand jury was to *stand between* the *prosecutor* and the accused. *Hale v. Henkel*, 26 S.Ct. 370, 373 (1905). It appears to some that the grand jury is obsolete. *Delays in Criminal Cases*, Campbell, *supra*.

The purpose of the [Fifth] Amendment was to limit the power of the legislature, as well as of the *prosecuting officers*, of the United States. *Ex Parte Wilson*, *supra*, at 939.

As the statistics quoted, supra, clearly prove, there is *no limit* to what a corrupt or overzealous prosecutor can do to an American citizen.

Such conduct on the part of a prosecutor does not even follow the United States Attorney's Manual:

> The Fifth Amendment to the Constitution of the United States provides, in part, that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger."
>
> While it is a very effective instrument of law enforcement, the grand jury is regarded primarily as a protection for the individual. It has been said that the grand jury stands between the accuser and the accused as "a primary security to the innocent against hasty, malicious, and oppressive persecution." *See Wood v. Georgia*, 370 U.S. 375, 390 (1962). The grand jury functions to determine whether there is probable cause to believe that a certain person committed a certain offense and, thus, to protect individuals against the lodging of unfounded criminal charges. *See United States v. Calandra*, 414 U.S. 338 (1974); *Branzburg v. Hayes*, 408 U.S. 665 (1972); *United States v. Cox*, 342 F.2d 167 (5th Cir.), *cert. denied*, 391 U.S. 935 (1965).
>
> *United States Attorneys' Manual*, Section 9-11.010 (Oct. 1, 1990).

Ironically, it is often the practice of federal prosecutors to quote *In re District Attorney of United States*, Case No. 3,925 (C.Ct. W.D. Tenn. 1872), to *contradict* their *own manual* when these issues are raised:

> This high officer cannot thus stand between the innocent and the guilty by the exercise of that sound discretion which is here accorded to him, if he is to be excluded from the grand jury room.
>
> *Id.*, 7 Fed. Cas. 745.
>
> The government may proceed in many cases if the district attorney elected so to do without your agency. It is only because the law officers prefer your intelligent and impartial investigation in all cases to the assumption of responsibility on their part that they do not proceed by information instead of indictment.
>
> *Id.*, 7 Fed. Cas. 746.

The nonsense in the second paragraph quoted in this case is contradicted by every Supreme Court case ever to address the subject of indictment by grand jury.

The problem is not that the machinery of the grand jury is obsolete. The problem is that the Congress threw an insurmountable monkey wrench into the grand jury machinery in 1906. The federal courts then, by the misinformed application of "case law," completely destroyed indictment by grand jury as the authors of the Constitution understood it.

The Fifth Amendment had in view the rule of the *common law*, governing the mode of prosecuting those accused of crime. *Mackin v. United States*, 117 U.S. 348 (1886), *United States v. Deisch*, 20 F.3d 139, 145 note 11 (5th Cir. 1994). The grand jury had common law origins. *In re April 1956 Term Grand Jury*, 239

F.2d 263, 268 (7th Cir. 1956).

Under the common law the grand jury was instructed by a charge from the *judge* who sat upon the bench. Indictments were then preferred to them in the *name* of the king, but at the suit of any *private prosecutor*. *Blackstone's Commentaries*, Vol. 5, p. 302 (Tucker Edition 1803).

Blackstone's Commentaries are a satisfactory exposition of the common law. *Bloom v. Illinois*, 88 S.Ct. 1477 (1968).

That this was the practice in United States courts for generations after the Fifth Amendment was enacted is also easily seen. The *court* is the *only* proper source from which a grand jury may obtain advice as to questions of law. No other person has a right to give a grand jury an opinion on questions of law, which affect the rights of individuals or of society. *United States v. Kilpatrick*, 16 F. 765, 770 (D.C.W.D.N.C. 1883). An early example of the judge instructing grand jurors in the law may be found in *Respublica v. Shaffer*, 1 U.S. (1 Dall.) 236 (O.T. Phila. 1788), quoted in *United States v. Williams*, 112 S.Ct. 1735, 1744 (1992).

This fact of law is apparently unknown to today's Congress or federal courts:

> A variety of proposals would replace or supplement the prosecutor as a legal advisor to a grand jury. Instead, there would be an independent office of the grand jury counsel to instruct the grand jury on the law and pass on the admissibility of evidence and competency of witnesses.
>
> Congressional Record, Extension of Remarks, Vol. 123, p. 21637, June 9, 1977, by Hon. Benjamin S. Rosenthal.

*I.e.*, our system already has a "grand jury counsel" to instruct the grand jury on the "law": he is called the *judge*.

> The very fact of the presence of the prosecutor in the grand jury room *contradicts* the historically defined role of that body. How can the grand jury protect the accused from the accuser if the accuser is alone with the grand jury and can effectively *control* the course of its investigation?
>
> Schwartz, *Demythologizing The Grand Jury*, 10 American Criminal Law Review 701, 759 (1972); see also page 758, note 291.
>
> In fact . . . the grand jury has become a tool of the prosecutor. By both establishing the grand jury's agenda and orchestrating the quality and quantity of the evidence presented, the prosecutor almost invariably determines who is and is not indicted.
>
> Congressional Record, Extension of Remarks, Vol. 123, p. 23394, July 15, 1977, Hon. Robert F. Drinan quoting the Boston Globe.

The grand jury was not meant to be the private tool of the prosecutor. *United States v. Fisher*, 455 F.2d 1101, 1105 (2nd Cir. 1972). This is *precisely* what it has become.

> Most grand jurors are pawns in the hands of many unscrupulous prosecutors . . . grand juries are no more than rubber stamps placing the onus of guilt on the accused.
>
> Congressional Record, Extension of Remarks, Vol. 123, p. 28357 and 28358, Sept. 8, 1977, Hon. William (Bill) Clay quoting the Boston Globe of July 11, 1977.

It is odd that a grand jury foreperson can influence the grand jury's individual members, see *Ramseur v. Beyer*, 983 F.2d 1215, 1237 (3rd Cir. 1992) and today's lawyers are completely oblivious to the influence of a *government attorney*.

> On November 3, 1806, Joseph Hamilton Daviess, United States Attorney for Kentucky, moved that a grand jury be convened to consider indicting Aaron Burr for attempting to involve the United States in a war with Spain. On December 3rd the grand jury was called. Daviess immediately moved "to be permitted to attend the grand jury in their room." This motion was considered "novel and unprecedented" and was denied. After hearing the evidence in secret the grand jury deliberated and, on December 5th, an ignoramus bill was returned.

> *Demythologizing The Grand Jury*, *supra*, at 734.

See also *United States v. Burr*, Fed. Cas. No. 14,892 (C.Ct.D.Ky. 1806).

Nor was the practice of prohibiting prosecutors[1] from leading grand jury investigations and degrading the grand jury into a rubber stamp an 1806 "anachronism" or "archaic practice," as pronounced in by Schwartz in *Demythologizing The Grand Jury*, *supra*.

> A solicitor is *not* a judicial officer. He *cannot* administer an oath. He *cannot* declare law. He *cannot* instruct the grand jury in the law. That function belongs to the *Judge alone*. If the grand jury desire to

---

[1] Prosecutor and prosecuting officers were not, under the Fifth Amendment, the same thing. Until the Fifth Amendment was amended by judicial fiat in the 19th century and congressional enactment in the 20th, the "prosecutor" was a private individual, not a government employee. See, *e.g.*, *United States v. Rawlinson*, Fed. Cas. No. 16,213 (C.Ct.D.C. 1802). Note that a *female* prosecutor, called a *prosecutrix*, still means what the word meant when the Fifth Amendment was authored.

> The Supreme Court of Missouri expanded the rule of *Welch* in *State v. Atkins*, 292 S.W. 422 (Mo. 1926), affirming the rape conviction of a physician who while examining a patient penetrated her by surprise and stopped when she protested. The Court explained:

> It is plain that, if appellant did penetrate prosecutrix sexually...no more physical force was employed by him than is necessarily incident to such an act when done with the consent of the woman...

> *Niederstadt v. Nixon*, No. 05-4329 (8th Cir. 10/17/2007).

be informed of the law or of their other duties, they *must* go into court and ask instructions from the bench.

*Lewis v. The Board of Commissioners of Wake Co.*, 74 N.C. 194, 197-199 (Superior Court of Wake County, 1876), quoted with approval in *United States v. Virginia-Carolina Chemical Co.*, 163 F. 66, 75 (C.Ct. M.D. Tenn. 1908), and *United States v. Kilpatrick*, *supra*.

The results of the dangerous mode of inquisition alluded to in *Lewis* in 1876 is aptly described in former U.S. Senator Abourzek's article, *The Inquisition Revisited*, 7 Barrister 19 (1980):

[A grand jury is] "a spear in the hands of ambitious prosecutors anxious to silence dissent or to climb to greater political heights over the backs of hapless defendants caught up in the system."

That it was up to the *judge*, under the practice known to the common law as understood by the framers of the Fifth Amendment, to instruct the grand jury as to its duties and responsibilities, was common knowledge in the federal courts of the 19th Century. See, *e.g.*, *Charge To The Grand Jury* (several cases with the same title), Fed. Cas. No. 18,255 (Cir.Ct.D.Calif. 1872), 18,248 (C.Ct.D.W.Va. 1868), 18, 251 (D.C.D. Oregon 1869), 18,257 (C.Ct.D. Maryland 1836), 18,258 (C.Ct.W.D.N.C. 1875) (Had Congress the authority to pass this Act?).

It was also well known that *additional* instructions to the grand jury *also* had to be given by the *judge*. *United States v. Watkins*, Fed. Cas. No. 16,649 (C.Ct.D.C. 1829).

This was also well known at the beginning of the 20th Century. The grand jury is a body known to the common law . . . Blackstone says (Volume 4 page

303).

These grand juries are previously instructed in the articles of their inquiry, by a charge from the *judge* who presides upon the bench. *Beavers v. Henkel*, 24 S.Ct. 605, 607 (1904).

As a federal judge in the nineteenth century remarked, "The moment the executive is allowed to control the action of the courts in the administration of criminal justice, their independence is *gone*." *In re Miller*, Fed.Cas. No. 9,552 (C.Ct.D.Ind. 1878).

That government lawyers were not allowed in the grand jury room, under the indictment by grand jury clause of the Fifth Amendment, was well understood in this country for over 100 years. See *United States v. Rosenthal*, 121 Fed. 862, 874 (S.D.N.Y. 1903) and the cases cited therein.

In order to overcome the *Rosenthal* decision and the intention of the Framers of the Fifth Amendment, Congress then enacted, on June 30, 1906, the statute that has come down to us as 28 U.S.C. § 515(a) and the Rule that has come down to us as Federal Rule of Criminal Procedure 6(d), permitting the attorneys for the government to "attend the grand jury in their room." See the Congressional Record for June 6, 1906, pp. 7913-7914, a portion of which reads as follows:

> The Secretary read the report submitted by Mr. Knox, May 28, 1906, as follows:
>
> The Committee on the Judiciary, to whom was referred the bill (S. 2969) authorizing the Attorney-General and certain other officers of the Department of Justice to conduct legal proceedings in any court of the United States, having considered the same, report the bill

>favorably without amendment. It is frequently desirable and even necessary that the Attorney-General should detail an officer of his Department to assist some United States attorney in the investigation and prosecution of cases of unusual importance or interest, or to make an independent investigation and report the result to the Department, and, if necessary, to prosecute the same; or, where this latter is impracticable, to appoint a special assistant to the Attorney-General, particularly in criminal matters.
>
>In 1903 the Attorney-General appointed a special assistant to investigate and report in the Japanese silk fraud cases, and it was held (121 Fed. Rep. 826, *U. S. v. Rosenthal*) that a special assistant to the Attorney-General is not an officer of the Department of Justice under sections 359 and 367, Revised Statutes, or other provisions of the United States Statutes, and the indictment was quashed because of the presence of this attorney in the grand jury room. **That case further holds that neither the Attorney-General, the Solicitor-General, nor any officer of the Department has the power to conduct or aid in the conduct of proceedings before a grand jury**. It is clearly of great importance that they should have this power.

From 1787 to the present time, therefore, a federal grand jury has been a body organized and functioning as by the common law at the date of the adoption of the amendment; and it seems reasonably clear that no power abides in the Congress to affect or modify the integrity and independence of the body as established. *United States v. Huston*, 28 F.2d 451, 452-453 (D.C. N.D. Ohio, W.D. 1928).

The question that has apparently been unanswered from that day to this is as follows: from what source or by what authority did Congress arrogate to itself the *right* to change the *meaning* and *mode* of *procedure* of the grand jury as it was understood in 1791 when the Fifth Amendment, U.S. Constitution, was enacted? By what Constitutional authority did Congress determine that members of the

Department of Justice "should have this power?"

If the answers to the foregoing two questions are "none" then this Court must, not may, dismiss the indictment against this defendant.

WHEREFORE, defendant Francis Leroy McLain moves this Court to grant him the relief he requests.

                                                              Respectfully submitted,

Date:  April 9, 2008

                                                         *s/ Rick E. Mattox*
                                                         _____
                                                         Rick E. Mattox, Attorney for Defendant
                                                         16670 Franklin Trail, Suite 250
                                                         Prior Lake, MN  55372
                                                         (952) 469-2272