UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                               Criminal No. 08-10 (PJS/FLN)

        Plaintiff,

        v.                                              **REPORT AND**
                                                   **RECOMMENDATION**

Francis Leroy Mclain,

        Defendant.

_____

David Genrich, Assistant United States Attorney, for the Government.
Rick E. Mattox for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 16, 2008, on Defendant's motion to suppress evidence obtained as a result of searches and seizures [#26], Defendant's motion to suppress statements, admissions and answers [#27], Defendant's motion to dismiss the indictment for failure to comply with Rule 6(b)(1) and (2) [#46], Defendant's motion to dismiss the indictment for violations of grand jury clause of the Fifth Amendment pursuant to 12(b)(3)(A) [#54], Defendant's motion to dismiss indictment pursuant to 12(b)(2) [#56], Defendant's motion to clarify status of the grand jury as will be applied to this court [#58], Defendant's motion to clarify jurors' oath [#64], and Defendant's Motion to Dismiss Indictment for Unlawful Service of Process in Violation of the Fourteenth Amendment [#78]. At the hearing, the Court received no testimony. The Government submitted four exhibits.[1] The matter was referred to the undersigned for Report and Recommendation

_____

[1]  Gov't Ex. 1 is a search warrant for a residence in Livingston, Montana.
    Gov't Ex. 2 is a search warrant for a residence on 24th Ave. in Minneapolis, Minnesota.
    Gov't Ex. 3 is a search warrant for office on Como Ave. in Minneapolis, MN.
    Gov't Ex. 4 is an IRS memorandum of interview.

pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons which follow, this Court

recommends Defendant's motions be denied.

## I.   FINDINGS OF FACT

On May 24, 2005, Magistrate Judge Richard W. Anderson of the District of Montana

signed a search warrant authorizing a search of a residence in Billings, Montana.  ("Montana

residence").  On May 26, 2005, Magistrate Judge Jonathan Lebedoff of the District of Minnesota

signed a search warrant authorizing a search of a residence on 24th Avenue in Minneapolis

("Minneapolis residence").  Also on May 26, 2005, Judge Lebedoff signed a search warrant

authorizing a search of a business office on Como Avenue in Minneapolis ("Minneapolis

office").  Special Agent ("SA") Shauna L. Snider of the Internal Revenue Service ("IRS") signed

the affidavit in support of these search warrants and attached it to all three search warrants.  SA

Snider has been employed as a special agent with the IRS since August of 2001.

SA Snider states in the affidavit that in her training and experience, she has become

familiar with various methods used by individuals to conceal their income from the government

including: using mailing addresses other than the one at which the individual resides or conducts

business; using currency whenever possible; failing to file individual income tax returns; placing

assets in other people's names including those of children; questioning the IRS' authority to

collect taxes and investigate failure to pay taxes; representing oneself as a consultant to avoid

having employment taxes withheld; supplying false information to financial institutions;

government entities or other institutions on applications or questionnaires; using trusts to conceal

assets; and using numerous bank accounts.  SA Snider also stated that, based on her training and

experience, she knows that documents and records involving tax avoidance schemes are usually

kept in the individual's residence or place of business, including the individual's garage and storage facilities.  SA Snider was also advised by IRS Special Agent and Computer Investigative Specialist, Scott Larson, that this information is also frequently stored electronically because it may be protected by a number of physical and software safeguards including passwords, encryption programs and removable media.  SA Larson has been a special agent with the IRS for 17 years, two and a half of which have been as a computer specialist.  He has received special training in the investigation of computers.

SA Snider was in charge of investigating the alleged failure of the Defendant and two businesses affiliated with him, Kink Hearts, LLC ("Kind Hearts") and Kirpal Nurses d/b/a Kind Hearts ("Kirpal Nurses"), to pay taxes from 2000 through 2003.  It was alleged that the Defendant did not pay his personal income tax and that the businesses did not pay employee taxes.  Kind Hearts and Kirpal Nurses provided temporary nursing services to nursing homes and other facilities.

SA Snider stated that the Defendant has not paid his taxes since 1999.  SA Snider learned by reviewing Hennepin County property records and by conducting surveillance in or about July 2004, that the Defendant resided at least part time at a residence on 24th Avenue in Minneapolis.

**A.     Defendant's Alleged Personal Tax Violations.**

In April 2004, SA Snider, along with two other IRS agents attempted to conduct an interview with the Defendant to ascertain why he had not paid his taxes.  The interview took place at the Defendant's Livingston, Montana, residence.  The Defendant refused to answer questions.  Several days after the interview, the Defendant sent correspondence to SA Snider including a letter titled "A Personal Letter from Your Friend Listed Above as an Explanation and

a Preamble to the Direct Challenge to Personal Authority."  The Defendant also included a letter

he sent to three banks which apparently attempted to quash the summonses that had been issued

to the banks for the Defendant's personal and business bank information.  The summonses were

never quashed.  The correspondence also included a printout from the website

www.givemeliberty.org, titled "Petition for Redress of Grievances Relating to Federal Income

Tax," which the Defendant stated summarized his position and beliefs about taxes.

      **B.**      **Alleged Employee Tax Violations by Defendant, Kind Hearts and Kirpal Nurses**.

SA Snider explained in her affidavit the employee taxes that an employer is required to

pay and concluded that Kirpal Nurses was deficient in paying the required taxes.

SA Snider stated that her investigation has revealed that the Defendant has been affiliated

with a number of other entities.  In 1989, Lifelines Care, a temporary nursing service was formed

and the registered address for the company was a residence on 24th Avenue South in

Minneapolis, the then and current Minnesota residence of the Defendant.  SA Snider stated that

Lifelines filed for bankruptcy on or about January 1999 and prior to this filing, the IRS has filed

a tax lien on Lifelines' receivables on November 30, 1998, in the amount of $22,253 and another

in 1995 in the amount of $186,000.  At the time that Lifelines filed for bankruptcy, it owed the

IRS $65,000 is unpaid employee taxes.

On or about March 1999, Kind Hearts, also a temporary nursing service, was formed.  SA

Snider explained that Kind Hearts was deficient in paying its employee taxes.  The Defendant's

father, Bernard Mclain, is listed in the Articles of Incorporation as one of the organizers of the

company and the president.  On or about April 2004, Mary Mclain, daughter of Bernard Mclain,

who has the power of attorney over him, met with SA Snider and stated that Bernard Mclain has

never participated in Kind Hears and that the business is run by her brother, Francis Mclain.

Mary Mclain also stated in an affidavit that her father became an officer of Kind Hearts and

opened a business account in his name even though he was not involved in the business because

he had the "misguided idea that he was helping out his son with business troubles and because he

had no knowledge of business laws and requirements..."

SA Snider stated that in September 2004, she participated in an interview with a former

bookkeeping employee of both Kind Hearts and Lifelines Care, whom she calls Employee No. 1.

Employee No. 1 told SA Snider that Lifelines Care and Kind Hearts were essentially the same

business; they were located at the same offices on Como Avenue in Minneapolis; and they had

essentially the same employees and clients.  Employee No. 1 told SA Snider that shortly before

Lifelines Care filed for bankruptcy, IRS agents visited the office, and because of issues

surrounding that visit, the company filed for bankruptcy.  He/she also said that the Defendant

owned and operated both companies and conducted business for both Lifelines Care and Kind

Hearts out of his garage at his residence on 24th Avenue South in Minneapolis.  According to

Employee No. 1, Mclain spent a lot of time making marketing calls from his home.  He also

went to the client nursing homes to collect the amount billed.

SA Snider stated that Employee No. 1 said that a number of business records were kept at

the Como Avenue office including, Forms W-4, Forms I-9, and photocopies of employees'

nursing licenses.  Employee No. 1 was also aware that the Defendant had purchased a home in

Montana.

The affidavit also describes a deal made between the IRS and the Defendant's father,

Bernard Mclain in 2003 after it was determined that Kind Hearts had not been paying

employment taxes.  The deal took into account that fact that Bernard "was basically a puppet for [the Defendant]."  The IRS determined that Kind Hearts owed $383,587.45 in unpaid taxes for the time period starting with the second quarter of 1999 and ending with the first quarter of 2002.

In or about November 2001, Kirpal Nurses acquired the assets of Kind Hearts and the trade name "Kind Hearts."  The address listed for Kirpal Nurses with the Secretary of State is a residence at 24th Avenue South in Minneapolis, the Defendant's Minnesota residence.  One of the organizers of Kirpal Nurses is the Defendant's daughter, Alahki Mclain.

In November 2004, SA Snider participated in an interview with a current employee of Kirpal nurses who had previously worked for Kind Hearts and Lifelines Care, whom Snider called Employee No. 2.  Employee No. 2 started working for Lifelines Care in or about 1987. The Defendant interviewed and hired Employee No. 2.  He/she told SA Snider that Lifelines Care and Kind Hearts had the same employees and clients; that the Defendant had been the owner of Lifelines, Kind Hearts and Kirpal Nurses; and that Employee No. 2 did not believe that the Defendant's father, Bernard Mclain, had ever done any work for any of the businesses. Employee No. 2 told SA Snider that the Defendant does some work from the Como Avenue office but does most of his work for Kirpal Nurses at his homes in Minnesota and Montana.

Employee No. 2 told SA Snider that Kirpal Nurses' business records are kept electronically; that Defendant takes care of the financial side of the business via email; and that the Defendant has the same software on his personal computer that the computers at the Como Avenue office have on theirs.

SA Snider stated that IRS records show that Kirpal Nurses has never filed an employment tax return and only made one employment tax payment of $4200 in December

2002.  IRS records also show that Kirpal Nurses has not filed Forms W-2 for the years 2002 or

2003.  In October 17, 2002, the Defendant, in his capacity as "administrator," signed a staffing

agreement between Kirpal Nurses and a client, Augustana Home.  On another occasion, the

Defendant opened a bank account for Kirpal Nurses and listed his Montana residence address as

the address for the company and prepared a bank signature card, listing himself as one of those

people authorized to sign checks on behalf of Kirpal Nurses.  SA Snider also stated that the

Minnesota Department of Health website lists the Defendant as the administrator for Kirpal

Nurses d/b/a Kind Hearts.

SA Snider also stated that the Defendant has also been affiliated with a number of other

entities that may have been involved in violating the criminal tax laws and may have been used

to conceal the Defendant's assets.  SA Snider stated that one such entity, Masters Marketing

Group, provided payments on the Defendant's loan to purchase his Montana home.  Between

January 1, 1999 and December 31, 2002, Masters Marketing Group and entities named Bay

View Funding, Serenity Services and Selfless Service made deposits into the checking account

for Kirpal Nurses, some of those deposits representing revenues to Kirpal Nurses.

## II.  CONCLUSIONS OF LAW

### A.    The Affidavits in Support of the Search Warrants Contained Sufficient Probable Cause for Issuance of the Search Warrants [#26].

Defendant contends that the affidavits in support of the search warrants failed to establish

probable cause.  Searches conducted pursuant to a warrant are reviewed to determine whether

the information in the warrant application and supporting affidavit provided probable cause for

the search.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the

totality of the circumstances, a reasonable person could believe there is a fair probability that

contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236).  When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning.  *United States v. Allen,* 297 F.3d 790, 794 (8th Cir. 2002).   The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . .  including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).  When information in the application for the search warrant is provided by a confidential informant, the totality of the circumstances must show that the information is sufficiently reliable.  *United State v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *Gates*, 462 U.S. at 233).  Sufficient reliability may be shown through "corroborat[ion] by other evidence, or if the informant has a history of providing reliable information." *Lucca*, 377 F.3d at 933 (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court " 'had a substantial basis for . . . conclud[ing] that probable cause existed.' " *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39.)  Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference.  *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

The Court concludes that, given the totality of the circumstances described in the affidavit in support of the search warrants, the information provided in the applications for the search warrants is sufficient for a reasonable person to believe that there was a fair probability that evidence that the Defendant was attempting to avoid paying personal income tax and he was the responsible person for Kind Hearts' and Kirpal Nurses' failure to pay employment taxes. The information provided in the affidavit is also sufficient to conclude that information related to these failures to pay taxes would be found at the Montana residence, the Minneapolis residence and the Minneapolis office. Both employees interviewed by SA Snider told her that the Defendant conducted business for Kind Hearts and Kirpal Nurses at the Como Avenue office and at his 24th Avenue residence. Both employees were aware that the Defendant owned a home in Montana and Employee Number 2 told Snider that the Defendant was also known to work out of his home in Montana. S.A. Snider stated that in her training and experience, documents and records involving tax avoidance schemes are usually kept in an individual's residence or place of business. In addition to this information, S.A. Snider stated that IRS records show deficiencies in the Defendant's personal income taxes and employment taxes of the two businesses.

**B.     The Good Faith Exception to the Warrant Requirement Applies to the Present Case and All Evidence Seized During the Execution of the Search Warrant is Admissible.**

Even if this Court were to determine that the applications in support of the search warrants did not provide probable cause for the issuance of the search warrants on the residences, law enforcement who executed the search warrants on the residences did so in the good faith belief that the search warrants were supported by probable cause, as they had been issued by a United States Magistrate Judge who determined that probable cause existed. The

good-faith exception to the exclusionary rule provides that evidence will not be excluded where police officers reasonably rely on a search warrant issued by a neutral judicial officer, even if that search warrant is later declared invalid. *See Leon*, 468 U.S. at 925-26. The officers in this case reasonably relied on search warrants that were issued by a neutral judicial officer; therefore, even if the search warrants in this case were not supported by probable cause, the evidence seized as a result of the execution of the search warrants is still admissible.

###### C.    Defendant's Motion to Suppress Statements, Admissions and Answers [#27].

This motion appears to be moot based on the Government's representation at the hearing that it was not planning to use any of the statements made by the Defendant during his interview with the IRS at trial.

###### D.    Defendant's Motion to Dismiss the Indictment for Failure to Comply with Rule 6(b)(1) and (2) [#46].

Defendant seeks to challenge the legal qualifications of individual jurors pursuant to Fed. R. Crim. P. 6(b)(1) and to dismiss the indictment under 6(b)(2). The Defendant argues that there is no record to show that at least 12 qualified grand jurors concurred in finding the indictment against the Defendant, a violation of Rule 6(b)(2). He contends that he is entitled to this information under Federal Rule of Criminal Procedure 6.

The Defendant must make a showing of particularized need to access grand-jury related information. A general argument that he is entitled to it as of right is not sufficient. *United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995); *U.S. v. Swan*, No. Crim. 03-36-01-B, 2003 WL 21799915, at *2 (D.N.H. July 22, 2003) (defendant was denied access to names of grand jurors and vote counts in absence of "a particularized showing as to why the names and specific votes of the grand jury that indicted him [are] necessary to challenge the jury selection process.").

The Government, furthermore, does not have a duty to record the names of the jurors concurring in issuing an indictment.  Federal Rule of Criminal Procedure 6(c) only requires that the grand jury foreperson record the number of jurors who concur and that such record may not be made public unless the court orders such disclosure.  As the court in *Schlegel v. Paulose* pointed out, Rule 6 does not require the foreperson to record the names of the jurors who concur in the indictment.  2008 WL 108991, at *3.  Defendant's motion to dismiss must be denied.

**E.      Defendant's Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b)(2) [#56].**

The Defendant contends that Congress had no authority to enact criminal penalties for not paying taxes or for not filling out forms correctly.  The Eighth Circuit has held otherwise. *U.S. v. Drefke*, 707 F.2d 978, 981 (8th Cir. 1983) ("Article I, Section 8 of the Constitution and the Sixteenth Amendment empower Congress to create and enforce an income tax.  Pursuant to that power, Congress made federal crimes of certain actions aimed at avoiding payment of income tax.").

**F.      Defendant's Motion to Dismiss Indictment for Violations of the Grand Jury Clause of the Fifth Amendment [#54].**

The Defendant contends that Congress did not have the authority to adopt Federal Rule of Criminal Procedure 6(d) which allows prosecutors to be present in the grand jury room because it is contrary to what the drafters of the Fifth Amendment intended.

The Fifth Amendment does not state whether or not prosecutors may be present in the grand jury room.[2]  The Supreme Court has held that Congress has "undoubted power to regulate

---

[2]  The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ."

the practice and procedure of federal courts" which it may exercise consistently with "the statutes or Constitution of the United States." *Sibbach v. Wilson &Co.*, 312 U.S. 1, 9-10 (1941). Pursuant to this power, Congress passed the Rules Enabling Act of 1934 which gave the Supreme Court the power to prescribe general rules of court procedure. *United States v. Navarro-Vargas*, 408 F.3d 1184, 1189 (9th Cir. 2005). The Supreme Court, in turn, established the Federal Rules of Criminal Procedure which, in part, govern grand jury procedure. *Id.* at n.6. Rule 6(d)(1) provides that the attorneys for the government may be present when the grand jury is in session. Because Rule 6 of the Federal Rules of Criminal Procedure was lawfully created, Defendant's motion must be dismissed.

G.     **Defendant's Motion for Clarification [#58].**

Defendant seeks clarification on whether the grand jury is an arm of the court, an arm of the executive branch or an independent body. As the Government points out, this motion does not identify a justiciable legal issue pled on a set of particularized facts and asks for no form of relief. The motion must be denied.

H.     **Defendant's Objection to the Juror's Oath [#64]**

The Defendant objects to the trial juror's oath. This motion must be denied without prejudice as it is more appropriately raised before the trial court.

I.     **Defendant's Motion to Dismiss Indictment for Unlawful Service of Process in Violation of the Fourteenth Amendment [#78].**

The Defendant contends that his arrest warrant was invalid because it was not supported by an affidavit under oath or affirmation and that it was not signed by a magistrate.

The Supreme Court has held that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury' conclusively determines the existence of probable cause and

requires issuance of an arrest warrant without further inquiry." *Ex parte United States*, 287 U.S.

241, 250 (1932).  The Advisory Committee Notes to Federal Rule of Criminal Procedure 9 state

that the Supreme Court's holding in *Ex parte United States* means that warrants may issue upon

indictments and do not require sworn affidavits; the indictment itself provides the probable cause

to issue the arrest warrant.

The Defendant also contends that the arrest warrant was invalid because it was not signed

by a magistrate.  Rule 9(b)(1) provides that an arrest warrant "must conform to Rule 4(b)(1)

except that it must be signed by the clerk and must describe the offense charged in the

indictment or information."  Even though Rule 4(b)(1)(D) requires that a warrant be signed by a

judge, Rule 9(b)(1) has been interpreted as requiring the signature of a clerk and not the

signature of a judge for an arrest warrant issued pursuant to Rule 9.  *See, e.g., United States v.

Smith*, 424 F.3d 992, 1008 (9th Cir. 2005).  In this case, the arrest warrant was signed by the

deputy clerk and is therefore sufficient.

### III.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendant's motion to suppress evidence obtained as a result of

searches and seizures [#26], Defendant's motion to suppress statements, admissions and answers

[#27], Defendant's motion to dismiss the indictment for failure fo comply with Rule 6(b)(1) and

(2) [#46], Defendant's motion to dismiss the indictment for violations of grand jury clause of the

Fifth Amendment pursuant to 12(b)(3)(A) [#54], Defendant's motion to dismiss indictment

pursuant to 12(b)(2) [#56], Defendant's motion to clarify status of the grand jury as will be

applied to this court [#58], Defendant's motion to clarify jurors' oath [#64], and Defendant's

Motion to Dismiss Indictment for Unlawful Service of Process in Violation of the Fourteenth

Amendment [#78] be **DENIED**.


DATED: May 14, 2008                        s/ *Franklin L. Noel*
                                           FRANKLIN L. NOEL
                                           United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 3, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 2, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.