UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

08-CR-00010-PJS-FLN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICK J. SCHILTZ |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | FRANKLIN L. NOEL |
| FRANCIS LEROY McLAIN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

DEFENDANT'S OBJECTIONS TO
THE MAGISTRATES REPORT AND RECOMMENDATION

The Defendant, Francis Leroy McLain, by his attorney, Rick E. Mattox, hereby objects to the Magistrate's Report and Recommendation to deny the Defendant's motions for the following reasons, by page number, *seriatim*, concerning the Magistrate's Findings of Facts and Conclusions of Law beginning on page 2 of his May 14, 2008 Report.

Defendant objects to the Magistrate assuming "facts" stated by SA Snider in her affidavit which are not backed by any bona fide evidence or exhibits.

A.

The Defendant objects to the Magistrate's acceptance of SA Snider's statement that "The Defendant refused to answer questions." The truth of the matter is that SA Snider and SA Tschida would not answer the Defendant's

questions of them regarding their authority or jurisdiction under the Constitution or how they determined the Defendant was liable or required for any alleged tax.

    A.

Defendant objects to the Magistrate's Conclusion of Law that the search warrants were legal, and that the supporting Affidavit established probable cause. If SA Snider wanted to establish probable cause, why did she not arrange an administrative interview with the Defendant where the Defendant could have a hearing and a chance to resolve any differences, disputes, concerns, or issues? The search warrants were simply issued without giving the Defendant any prior Hearing or Notice.  If SA Snider was truly interested in protecting the Defendant's rights as part of being true to her oath to support and defend the Constitution of the United States, then why did she not simply notify the Defendant of his obligation to withhold taxes as mandated by Section 7512 of Title 26?  Why did she not issue a request or a summons to the Defendant for an audit of his books and papers? Why did she not give the Defendant any kind of Administrative Hearing?

    The Defendant has had no administrative due process in this matter nor has he been given any opportunity to openly discuss and/or dispute any of the allegations or for his side of the story to be heard.  The Defendant has received no Notice of Requirement, no Notice of Deficiency, no Letter of Assessment, no Collection Hearing opportunity, and no Notice of Rights regarding collection due process in order for him to respond in any intelligent way to those in the IRS who are posing as government officials.  The Defendant requests this Court to mandate

that the IRS abide by the Administrative Procedures Act, and to exhaust all available administrative due process remedies to resolve any disputes first before proceeding further in this action, as this is a *civil* matter, not a *criminal* matter. See *Connolly v. General Construction*, 269 U.S. 385, at 391, which states that notification of legal responsibility is the "first essential of due process of law".

The Defendant further objects since the Magistrate has failed to address the issue that the U.S. Attorney and the grand jury have assumed facts not in evidence with respect to the presumption that the Defendant is required to withhold employment taxes in light of Internal Revenue Manual, Section 5.14.10.2 which clearly states that private-sector employers are not required to enter into payroll deduction agreements.  No where has the government given any statutory evidence that the Defendant was required to file a return for employment taxes and/or pay over withholding/employment taxes that is based upon any specific section of Title 26 USC which would apply to the Defendant.  The indictment and the affidavit for the search warrant state only a penalty section of the IRC (Section 7202), but do not state which specific section or sections of the code the Defendant has allegedly violated.  Therefore both the indictment and the Affidavit of Probable Cause should be found by this Court to be void for vagueness.

While the Magistrate concluded, absent a *Franks v. Delaware*, 438 U.S. 154 (1978) hearing that, given the totality of the circumstances described in the affidavit in support of the search warrants, the information provided in the applications for the search warrants is sufficient for a reasonable person to believe

that there was a fair probability that the Defendant was committing criminal acts in regard to taxes, the opportunity to have a Franks hearing prior to the Report and Recommendation being issued was denied.  Defendant objects to this denial.

If the court somehow finds that the initial 2005 search warrants were valid, the Defendant objects to the searches of the computers which were done without any warrants, because computers are closed containers within the meaning of Fourth Amendment jurisprudence.  The treatment of computer storage media as "closed containers" is well settled.  The Fourth Amendment generally prohibits law enforcement from accessing and viewing information stored in a computer without a warrant if it would be prohibited from opening a closed container and examining its contents in the same situation.  See COMPUTER CRIME AND INTELLECTUAL PROPERTY SECTION, Criminal Division, United States Department of Justice, SEARCHING AND SEIZING COMPUTERS AND OBTAINING ELECTRONIC EVIDENCE IN CRIMINAL INVESTIGATIONS 1 (July 2002).

Indeed, more than one commentator, including the Chief Judge of this Court, have proposed the further need to treat all "separate hard drive files as separate closed containers."  See, e.g., James M. Rosenbaum, *In Defense of the Sugar Bowl*, 9 Green Bag 2d 55 (Autumn 2005).  Because they are considered "closed containers," computers and computer hard drives may not be searched lawfully except pursuant to a warrant specifically authorizing it.  See *Kansas v. Rupnick*, 125 P.3d 541, 557 (2005).

The three search warrants (government Exhibits 1, 2 and 3) authorized only a search of the premises. They permitted the officers to search for, and to seize, specifically identified "property and things," including "computers," and "any device or media capable of storing electronic digital media." The warrant did not, however, purport to authorize the separate search of those closed containers found and seized at the business and the residences. The Supreme Court has commented on this procedure a long time ago, noting the necessity of obtaining a warrant for the separate search of the container after its seizure:

> Even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant, . . . or one of the well-delineated exceptions to the warrant requirement." *Horton v. California*., 496 U.S. 128, 141 n.11 (U.S. 1990) (citations omitted).

Law enforcement and the courts have recognized and followed these principles and procedures in the search and seizure of computers for at least a decade. For example, see *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999). The error of the police in the Carey case was not their failure to obtain a warrant before searching the computers, the error was their overbroad search of the files on the computer after the warrant was obtained. The Tenth Circuit reversed Carey's conviction because the search of the computer media exceeded the scope of the warrant's authorization. The result obviously would have been the same if the officers had failed to secure the warrant in the first place.

The Court in *United States v. Leon*, 468 U.S. 897 (1984), made it clear that the good-faith doctrine applies only when an officer obtains a valid warrant from a

neutral magistrate and acts within the scope of that authorization.  Objective good faith is not manifested by the record here as the IRS agents have greatly exceeded the scope of the search authorized by the warrants when they directed the separate searches of the computer hard drives.

Defendant will concede that the Fourth Amendment no longer means what it once did.

A warrant not specifying particular papers is worse than the Spanish Inquisition.  *In re Hale*, 139 F. 496, 504 (C. Ct. S.D.N.Y. 1905).

> The bending of the meanings of words is symptomatic of a diseased institution, with the angle of linguistic deflection indicating the seriousness of the cancer within.  The Spanish Inquisition represented an advanced case.  <u>Rawson's Dictionary of Euphemisms and Other Doubletalk</u>, Revised Edition, p. 35 (1995).

Some courts have admitted that the Fourth Amendment has been abrogated by judicial decisions.  *United States v. Chapman*, 954 F.2d 1352, 1367 (7th Cir. 1992); *United States v. Brown*, 49 F.3d 1162, 1177 (6th Cir. 1995), though others have held that general warrants do not satisfy the Fourth Amendment.  *United States v. Jones*, 54 F.3d 1285, 1289-1290 (7th Cir. 1995).

Defendant is a bit confused about the reference to a "confidential informant" on this page.  Are Employee's #1 and #2 the "confidential informants" in this matter?  If so, how and where does SA Snider show that such informants have "a history of providing reliable information"?

B.

Defendant believes that if the current Supreme Court were to adjudicate the "good faith exception to the warrant requirement" in the same fashion it arrived at its decision in *Crawford v. Washington*, 541 U.S. 36 (2004) (deriving original intent by historical example prior to 1791 as opposed to building on precedent) the "good faith exception" would become history, an argument that must, for now, be left to future Supreme Court decisions.

However, the Defendant, through his attorney, respectfully objects to the Magistrate's finding that the "good faith exception to the warrant requirement" applies to the present case. If this Court determines that the applications in support of the search warrants did not provide probable cause for the issuance of the search warrants, then it should find that law enforcement who executed the search warrants on the residences did not do so in the good faith belief that the search warrants were supported by probable cause because the officers themselves were the ones who withheld important information from the United States Magistrates who signed the warrants as discussed above, and therefore the Magistrates could not be deemed as "neutral" judicial officers.

The opening brief of *Schlegel v. Paulose*, case no. 08-1627, currently pending in the Eighth Circuit Court of Appeals is attached hereto as Exhibit A. The legal arguments in that brief are adopted and incorporated herein by reference.

The arguments advanced against the Government's position concerning the issues raised in this action are also adopted and incorporated by reference herein.

F.

The question here is: does Congress have the authority, merely by legislating, to amend the procedure contemplated by *the people* when the Fifth Amendment was enacted?

[Congress] . . . is not given power by itself . . . to amend the Constitution. *Myers. v. United States*, 47 S.Ct. 21, 37 (1926).

Congress [may not] change the meaning of the Constitution through the passage of ordinary legislation. *In re Young*, 141 F.3d 854, 859 (8th Cir. 1998).

> Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them.
>
> *Miranda v. Arizona*, 86 S.Ct. 1602, 1636 (1966).
>
> It is not without significance, that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.
>
> *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 179 (1951) (Douglas, J., concurring).

Do the courts have the authority to change the meaning of the word *prosecutor*, which once meant "complaining witness," just as the word prosecutrix still does today?

> After many years of public service at the national capital, and after a somewhat close observation of the conduct of public affairs, I am impelled to say that there is abroad in our land a most harmful tendency to bring about the amending of constitutions and legislative enactments by means alone of judicial construction.
>
> *Standard Oil Co. v. United States*, 31 S.Ct. 502, 533 (1910) (Justice Harlan, concurring in part and dissenting in part).

If Congress and the Supreme Court have the authority to change the meaning of the Constitution and the modes of procedure envisioned by those who authored that instrument, this Court should plainly so state.

G.

Must Defendant file a separate Petition for Declaratory Relief in order to determine the issue?  It is the *duty* of the Court to *say* what the law *is*.  Anything less is an abrogation of that duty.

H.

Defendant is entitled to more than an almost boilerplate recitation of the prosecutor's position on this issue.

I.

The question here is:  what was *original intent* of the Fourth Amendment and the Rules of Criminal Procedure on this issue?

The Defendant respectfully objects to the Magistrate's findings here, <u>first</u> because he mistakenly entitles Defendant's Motion at I. with the *Fourteenth* Amendment (instead of *Fourth* Amendment), <u>second</u> because he has turned a blind eye and does not comment upon the government's violations of numerous rules of procedure and statutes in the issuance of the arrest warrant and in the arrest process itself, and <u>third</u> because even though he states that an "indictment itself provides the probable cause", still the indictment itself was not sworn to under oath as predicated by the Fourth Amendment.

The so-called "indictment" was signed by the U.S. Attorney and by the Foreman of the Grand Jury with no oath or affirmation supporting it. Throughout the history of American jurisprudence the underlying principle is that the warrant cannot be issued but upon probable cause supported by oath or affirmation. This is true whether or not the court determines that an affidavit is the required instrument to establish that probable cause exists, or that the indictment can be used to establish that probable cause exists. Either way the written instrument must contain a signature under oath, which is administered by someone qualified to administer oaths. See *Giordenello v. United States*, 357 U.S. 480 at 486-86 (June 30, 1958), *Ex Parte Burford*, 7 U.S. 448 (Cranch, 1806), *State v. Miles*, 29 Wn. 2d 921 at 926, 190 P. 2d 740 (1948).

The Magistrate avoided the issue of whether or not the lack of a Court Seal (as required under Title 28, USC, Section 1691) made the arrest warrant and search warrant invalid. In his Motion to Dismiss, the Defendant asserted that the arrest warrant was not valid because of the failure to issue it under a court seal and the lack of a signature by a judge. The search warrant was not signed by a clerk of the court as also required by Title 28, USC, Section 1691. The indictment was equally defective on its face as it was not signed under oath and was not signed by the clerk of court under the court seal. A series of rules violated by the court in issuing the arrest warrant and the violation of Title 28, USC, Section 638(c) which mandates a Magistrate's seal, as well as other procedural and jurisdictional issues raised in the Defendant's Motion, were simply not addressed by the Magistrate.

The failure by the U.S. Attorney to respond to and to rebut or refute any of the assertions the Defendant has made regarding the affirmative defenses in his motion to dismiss for defective service of process, such as the lack of proper signatures and the lack of a court seal on the indictment, the search warrant, and the arrest warrant, is interpreted as an admission and confession to all that the Defendant has stated with respect to these issues as true, correct, lawful and binding upon them.

Defendant presents the court with an appropriate quote from *Olmstead v. U.S.*, 277 U.S. 438 (1928):

> In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously.  Our government is the potent, the omnipresent teacher.  For good or for ill, it teaches the whole people by its example.  Crime is contagious.  If the government becomes a lawbreaker, it breeds contempt for law…  To declare that in the administration of the criminal law the end justifies the means – to declare that the government may commit crimes in order to secure the conviction of a private criminal – would bring terrible retribution.  Against that pernicious doctrine this court should resolutely set its face.

Defendant finds it odd that "H" on page 12 states that his Motion for Clarification "must be denied without prejudice" on page 12 but *no mention* is made of "without prejudice" on pp. 13-14.

## CONCLUSION

This Court should replace the Magistrate's Report & Recommendation with its own conclusions, addressing the *original intent* of the Constitution and that of those who authored Federal Rules of Criminal Procedure 6(b)(1) and (2), 4(c)(2),

4(c)(3)(A), 9(b), 9(c), Title 28 USC Sections 638(c) and 1691, and Title 26 USC Section 7512.

Date:  June 2, 2008               Respectfully submitted,

                                  *s/Rick E. Mattox*

                                  _____
                                  Rick E. Mattox
                                  16670 Franklin Trail, Suite 250
                                  Prior Lake, MN 55372
                                  (952) 469-2299