UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 08-10 (PJS/FLN)

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>          Plaintiff,        )<br>                                                          )<br>v.                                                       )<br>                                                          )<br>FRANK LEROY MCLAIN,              )<br>          Defendant.      ) | **GOVERNMENT'S<br>SENTENCING MEMORANDUM** |

The government respectfully submits this Sentencing Memorandum in the above-captioned matter. The government incorporates by reference all the files and proceedings to date, including the trial proceedings, as supplemented by any argument of counsel entertained by the Court at the sentencing hearing.

This memorandum integrates a summary of documents that support the government's advisory guidelines calculations and the government's sentencing recommendation. The documents referenced herein were all received into evidence at trial, with accompanying foundational and explanatory testimony.[1] Absent a need to call a witness to rebut any material, disputed evidentiary presentation made by defendant, the government does not currently intend to call any witnesses at the sentencing hearing.

**Presentence Investigation; Advisory Guidelines Calculation**

The government has reviewed the Presentence Investigation Report ("PSI"), and has no objection to the factual statements or advisory guidelines calculations found therein with the

---

[1] For ease of reference and review, a copy of the exhibit list is attached hereto as Attachment A. The list may also facilitate direction from the Court to the parties as to any exhibit that is not attached to this filing that the Court wishes to receive and review.

exception of the base offense level calculation.[2]  With respect to the base offense level, the government asserts as follows.

Base Offense Level:  The PSI includes a base offense level of 20 based upon a failure to collect and pay $826,795.89.  See PSI at ¶¶ 12, 21.  The government asserts a base offense level of 22, based on a tax table figure for advisory guidelines purposes of over $1,000,000 but less than $2,500,000.  See United States Sentencing Guideline ("U.S.S.G.") § 2T4.1(I); PSI Addendum at A-1, ¶ 1.

At the threshold, the government notes that in several instances its tax calculations as summarized below depend upon tax treatment of defendant's nursing and office personnel as employees.  The government submits that conclusion is supported by the requisite preponderance of the evidence (indeed much more than a preponderance in the government's view) received at trial in this matter, a substantial portion of which related to the employee classification of defendant's personnel.[3]

With respect to the tax loss calculation itself, the government arrives at $1,215,205.82 as a reasonable estimate of tax loss as set forth in the following chart.

---

[2]   The government noticed an intention to seek a two-level role enhancement in its objection letter to the Probation Office.  See PSI Addendum at A-1, ¶ 2. The government withdraws that objection.

[3]   The evidence included, but was not limited to, the testimony of ICE Special Agent Joyce Larsen, J.B. McLain, Daniel Shetka, and the nurses called to testify by defendant, as well as exhibits admitted through those and other witnesses to include service agreements with nursing facilities identifying Kirpal's responsibilities vis-a-vis their nurses and company documents demonstrating Kirpal's treatment of its staff as employees.  See, e.g., Attachment A, Exhibit List, Exhibits 176, 184-93, 196, 200, 202, 204-05, 207, 210-16, 218-19, 230, and 234 (not attached hereto but available to the Court and/or defendant immediately upon demand).

| Nature of Tax | Amount of Tax | Support in the Record for Asserted Amount |
|---|---|---|
| Failure to Collect and/or Pay FICA/Medicare for Nurse Employees for 4th Quarter 2002 through 4th Quarter 2004 (the period covered in the counts of conviction) | $503,232.60 | The amount is comprised of the equal employee and employer share of FICA/Medicare taxes for defendant's nurse employees, each share totaling $251,616.30.<br><br>See Attachment B, Trial Exhibit 104 ("Summary of Overall Nursing Personnel Calculations 4th Quarter 2002 through 4th Quarter 2004") |
| Failure to Collect and/or Pay Federal Withholding for Nurse Employees for 4th Quarter 2002 through 4th Quarter 2004 (the period covered in the counts of conviction) | $327,414.93 | The amount is comprised of the amount of federal withholding for defendant's nurse employees.<br><br>See Attachment B, Trial Exhibit 104 ("Summary of Overall Nursing Personnel Calculations 4th Quarter 2002 through 4th Quarter 2004")<br><br>* The aggregate amount of tax summarized in this row and the one above with respect to nurse employee FICA/Medicare and federal withholding ($830,647.53) is slightly lower than the total reflected as the basis for tax table calculations in the PSI at ¶ 12 ($830,995.89). The government uses the lower number, which is derived from the trial exhibits, to defendant's benefit. The higher number reflects small additional taxes identified after trial with respect to the nurse employees.<br><br>The government also notes that the applicable guideline, U.S.S.G. § 2T1.6, defines the tax amount for tax table purposes for failure to collect/pay over as "corresponding to the tax not collected or accounted for and paid over." That is the amount captured for nurses in this row and the row above, and for office employees in the next two rows. |

| **Nature of Tax** | **Amount of Tax** | **Support in the Record for Asserted Amount** |
|---|---|---|
| Failure to Collect and/or Pay FICA/Medicare for Office Employees for 2003-2004 | $34,685.08 | The amount is comprised of the equal employee and employer share of FICA/Medicare taxes for defendant's office employees, each share totaling $17,342.54.<br><br>See Attachment C, Trial Exhibit 118 ("Summary of Kind Hearts/Kirpal Nurses Withholding for Office Personnel per Kirpal nurses Records, 2003-2004") |
| Failure to Collect and/or Pay Federal Withholding for Office Employees for 2003-2004 | $18,970.35 | The amount is comprised of the amount of federal withholding for defendant's nurse employees.<br><br>See Attachment C, Trial Exhibit 118 ("Summary of Kind Hearts/Kirpal Nurses Withholding for Office Personnel per Kirpal nurses Records, 2003-2004") |
| Relevant Conduct: Tax calculation; Fraudulent deductions; Brad Hall | $207,511.67 | The amount is comprised of the $741,113.12 "gifted" tax deductions to Brad Hall multiplied by the .28 tax multiplier applicable to deduction-fraud conduct.<br><br>See U.S.S.G. § 2T1.1(c)(1)(C) (tax multiplier); Attachment D, Trial Exhibit 164 at 3 (identifying amounts of "gifted" tax breaks to Brad Hall) and 5 ("As the bank knows, I have been the one that has made all the payments on the [Montana ranch] note, initiated the whole loan process in the beginning, and made the $550,000 down payment."); Attachment E, Trial Exhibit 40 at 1-2 (Letter from defendant to Brad Hall's attorney discussing "gifted" deductions and tax value of those deductions to Brad Hall).<br><br>* With respect to inclusion as relevant conduct of these and the other tax calculations summarized below, please see U.S.S.G. § 1B1.3(a)(2) and (a)(3); § 1B1.3 Commentary at Application Note 9; and § 1B1.3 Commentary at "Background." |

| **Nature of Tax Loss** | **Amount of Tax Loss** | **Support in the Record for Asserted Amount** |
|---|---|---|
| Relevant Conduct: Tax calculation; Fraudulent deduction; Daniel Shetka | $2,800.00 | The amount is comprised of the $10,000 "gifted" tax deduction to Daniel Shetka multiplied by the .28 tax multiplier applicable to deduction-fraud conduct.<br><br>See U.S.S.G. § 2T1.1(c)(1)(C) (tax multiplier); Attachment F, Trial Exhibit 156-1 (Letter to Dan Shetka) |
| Relevant Conduct: Tax calculation; Fraudulent deductions; Larry McCormick | $30,800 | The amount is comprised of the $110,000 in "gifted" tax deductions to Larry McCormick multiplied by the .28 tax multiplier applicable to deduction-fraud conduct.<br><br>See U.S.S.G. § 2T1.1(c)(1)(C) (tax multiplier); Attachment G, Trial Exhibit 159, at ¶¶ 3,4 ("Proposal to Larry McCormick") |
| Relevant Conduct: Tax calculation; Tax evasion; Personal income | $93,991.19 | This amount is comprised of the total of interest paid on the Montana ranch mortgage for the years 2000-2004 ($469,955.96), imputed to defendant as income during years for which he filed no personal income tax return, multiplied by the .20 tax multiplier applicable to failure to file.<br><br>See U.S.S.G. § 2T1.1(2)(A) (tax multiplier); Attachment D, Trial Exhibit 164 at 3 (identifying amounts of mortgage interest payments on Montana ranch for years 2000-2004) and 5 ("As the bank knows, I have been the one that has made all the payments on the [Montana ranch] note, initiated the whole loan process in the beginning, and made the $550,000 down payment."); Attachment H, Trial Exhibits 78 and 80 (reflecting no personal income tax return filed by defendant from 2000 to the present); see also Attachment I, Trial Exhibit 38 (summary of loan payments identified on Montana ranch mortgage); Attachment J, Trial Exhibit 39 (2002 mortgage interest statement) |

| **Total Tax Amount for Tax Table Purposes** | |
|---|---|
| **Sub-Total of Above** | $1,219,405.82 |
| **Credit for employment taxes paid in 2002** | ($4,200.00) |
| **Total Tax** | $1,215,205.82 |

The government submits the above is a conservative estimate, amply supported by evidence received at trial that meets and exceeds the requisite preponderance of the evidence standard. See United States v. Hart, 324 F.3d 575, 578 (8th Cir. 2003)("[T]he government has the burden at sentencing to prove fact-intensive issues such as tax loss by a preponderance of the evidence.") (internal quotations marks and citation omitted). The actual tax consequences of defendant's flagrant disregard of the tax code are likely substantially greater than the total reflected above. For example, by imputing as income only monies used by defendant to pay mortgage interest (and only for the time period 2000-2004), the estimated tax loss reflects an exceedingly conservative approach. The tax computations described above imputes no income for principal payments made on the Montana ranch, and imputes none of the other income received by defendant from the nursing operation or other sources in the 2000-2004 time frame. See generally Attachment K, Trial Exhibit 34 (financial statement of defendant from April 2001 seized during search warrant and reflecting substantial assets). The above also does not include any taxable income at all in tax years 2005 to the present, any loss for defendant's failure to file corporate tax returns for the nursing business, or any loss for state withholding or unemployment taxes that were not paid.

To the extent an even greater amount for tax table purposes cannot be identified with precision, that uncertainty is generated largely by defendant's hiding and shifting of assets; his use of multiple bank accounts, including revolving accounts for the business itself and accounts opened

in the names of other various other entities created by defendant, to receive and disburse revenue generated by the nursing business; his various schemes to disguise income to evade taxes; and his use of family members like Alakhi McLain as putative bank account-holders to accomplish the hiding and co-mingling of funds. Under these circumstances and based upon the available facts as received in evidence during trial, a Section 2T4.1 tax table figure at or greater than the government's estimate, and in all cases falling between $1,000,000 and $2,500,000, is a reasonable and fair estimate. See id. ("In some instances ... the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts.") (quoting U.S.S.G. § 2T1.1 n.1).

Based upon an offense level of 22 and a criminal history category of I, the government submits the appropriate advisory guidelines range is 41-51 months.

## Sentencing Recommendation

The government respectfully recommends a sentence of no less than 51 months in this matter. A sentence of no less than 51 months is just and reasonable, and fully supported by the sentencing factors set forth in 18 U.S.C. § 3553(a).

The Court is well-aware of the trial record in this case, and the government does not belabor that record here. Defendant's criminal conduct was sustained and blatant. His ongoing tax fraud schemes included his willful disregard of a civil settlement agreement and state and federal law, and his use of bankruptcy proceedings, successor entities for the nursing business, other entities he created and used to hide income and evade taxes for himself and others, various bank accounts in at least two states, friends and family members as putative incorporators and control persons, and the various other contrivances explored at trial. See, e.g., Attachments D-G (reflecting various tax

fraud schemes); see also, e.g., Attachment L, Trial Exhibit 30 (summary chart of successor entities and putative controlling parties for the nursing business); Attachment M, Trial Exhibit 151 (document outlining tax evasion devices formulated by defendant in response to 2002 state law). Considerations of the nature and seriousness of the offenses, the history and characteristics of defendant as they bear on the growth and sophistication of defendant's tax fraud schemes, the need to promote respect for the law, provide adequate deterrence (both specific and general), and to protect the public from further crimes of defendant all counsel in favor - indeed strongly in favor -- of a sentence at the top end of advisory range or higher. See U.S.S.G. Part T, Introductory Commentary ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax laws. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.").

Enough is enough. The tax fraud evident in this case was remarkably egregious. The government respectfully recommends a sentence of at least 51 months imprisonment.

Dated: April 1, 2009                                    Respectfully Submitted,

                                                        FRANK J. MAGILL
                                                        United States Attorney

                                                        s/David M. Genrich

                                                        BY: David M. Genrich
                                                        Assistant U.S. Attorney